IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW T. WASIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 21 C 1943 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Matthew Wasik seeks to overturn the denial of his application for Social Security childhood disability benefits. Wasik contends that the Administrative Law Judge (ALJ) who denied his claim lacked substantial evidence supporting her determinations at various steps of the five-step evaluation process set forth in 20 C.F.R. § 404.1520. The Court disagrees and enters judgment in favor of the Acting Commissioner of Social Security for the reasons explained below.

### Background

Wasik filed for childhood disability benefits in July 2018, alleging that he had been disabled since his birth in November 1993. The relevant period for determining whether he qualified for benefits was November 23, 2011, to November 22, 2015—the day of his eighteenth birthday to the day before his twenty-second birthday. The Court will summarize Wasik's condition and ALJ Jessica Inouye's decision as relevant to this appeal. The following facts are undisputed except where otherwise noted.

Wasik claims to have suffered from epilepsy, obstructive sleep apnea, major depressive disorder, anxiety, and obsessive-compulsive disorder (OCD) throughout his life. When he was sixteen, he dropped out of McHenry County College because of worsening symptoms, and at eighteen, he was unemployed and living at home. Wasik maintains that these conditions have prevented him from working, as he has problems retaining information, concentrating, and keeping a normal sleep schedule. He also suffers from addictive tendencies, which includes using a computer excessively. Wasik says that none of his prescribed treatments—such as a VNS implant for seizures, a CPAP machine for sleep apnea, and various drugs for depression and anxiety—has been entirely effective.

Wasik's medical records begin in 2013 and indicate that he has seen a number of doctors to attempt to confirm the diagnosis of his conditions and obtain appropriate treatment. The following examples provide a glimpse into this medical journey. In November 2013, Wasik received a brain SPECT scan—a test that creates a detailed, 3D map of the brain's blood flow activity—that reported findings compatible with anxiety, attention and learning dysfunctions, and limbic seizures, but incompatible with depression. Later in May 2014, Wasik began regular transcranial magnetic stimulation (TMS) treatments after experiencing discomfort with his VNS implant. The TMS treatments led to symptom improvement, but in the following months, these improvements dissipated when Wasik missed treatments. In May 2015, Wasik received a sleep endoscopy that indicated his excessive daytime sleepiness could be the result of untreated sleep apnea, medication side effects, or depression. Then in June 2015, Wasik began seeing a psychiatrist who endorsed diagnoses of depression, poor

concentration, hypersomnia, and anxiety.

In July 2018, Wasik filed an application for childhood disability benefits. The claim was denied initially in November 2018 and upon reconsideration in April 2019. Disability Determination Services (DDS) mental consultants provided opinions at these initial review stages and determined that there was insufficient evidence to support a finding that Wasik had been disabled prior to the age of twenty-two, as required to obtain childhood disability benefits. Wasik filed a request for hearing two months later, which the agency granted.

In November 2019, Dr. Donald Raden and Dr. Erica Schultz, respectively Wasik's psychiatrist and therapist at the time, completed mental residual functional capacity statements as his treating providers. Dr. Raden offered diagnoses of major depression and OCD; Dr. Schultz offered diagnoses of major depression, anxiety, and insomnia. Both of them opined that Wasik's impairments were sufficiently severe that they would limit his ability to sustain full-time work.

The ALJ held a hearing in June 2020. Dr. Gilberto Munoz served as the SSA's independent medical expert. After reviewing Wasik's medical record, Dr. Munoz endorsed the diagnoses of a seizure disorder and sleep apnea. He stated, however, that he could not testify that Wasik had psychiatric impairments. Dr. Munoz ultimately opined that Wasik's conditions would allow him to perform sedentary work so long as he had certain accommodations, such as exceptions for operating dangerous machinery and driving.

In September 2020, the ALJ denied Wasik's application after finding that he was not disabled during the relevant period based on all the evidence, including Dr. Munoz's

3

opinion, Wasik's hearing testimony, and his medical records. In February 2021, the SSA Appeals Council denied Wasik's request for review of the ALJ's decision. Having exhausted administrative remedies, Wasik filed suit in this Court asking to overturn the denial of his claim.

## Discussion

After exhausting administrative remedies, an applicant for Social Security benefits may seek review of a denial in federal district court. 42 U.S.C. § 405(g). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

On review, the ALJ's findings of fact are conclusive if they are supported by substantial evidence. *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). "The court's role is not to reweigh evidence, but to determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). The claimant bears the burden of demonstrating disability. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

The ALJ followed a five-step evaluation process to determine whether Wasik was disabled during the relevant period. *See* 20 C.F.R. § 404.1520(a). The third, fourth, and fifth steps of this evaluation are the most relevant to this appeal. At the third step, the ALJ determines whether the claimant's impairment or combination of impairments

meets or equals an impairment listed in the applicable regulations, and if so the claimant qualifies for disability benefits without regard to his ability to work. *Id.* § 404.1520(c). If the applicant does not qualify via the third sequential step, the fourth step consists of determining the claimant's "residual functional capacity" (RFC), which is an individual's ability to work on a sustained basis despite impairment limitations. *Id.* § 404.1520(e). The fifth and final step consists of the ALJ determining whether the claimant is able to work given his RFC. *Id.* § 404.1520(g).

**1.      Mental functioning**

At step three of the evaluation process, the ALJ considered the record and determined the severity levels of Wasik's mental impairments in accordance with the "paragraph B criteria" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. As relevant here, the ALJ concluded that Wasik had a mild limitation in understanding, remembering, or applying information and that he had a moderate limitation in concentrating, persisting, or maintaining pace and adapting or managing oneself. None of these severity findings sufficed for a determination of disability at step three.

Wasik argues that the ALJ made a number of errors when determining the severity of his mental impairments at step three. For one, Wasik contends that the ALJ erred in assessing his limitations. Specifically, he contends that his ability to perform everyday activities like preparing meals and playing games did not mean that he could work on a sustained basis. This contention, however, effectively asks the Court to reweigh the testimonial evidence and substitute its judgment for that of the ALJ. That aside, the ALJ did not inappropriately blur the distinction between Wasik's ability to perform everyday tasks and his ability to perform gainful activity. The ALJ appropriately

5

took into account Wasik's ability to perform everyday activities in determining his limitations and, in turn, took these limitations into account in determining his residual functional capacity. See Admin. Rec. at 18-25. The Court cannot appropriately reweigh this evidence. See *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("Despite [claimant's] colorable arguments, we will not reweigh the evidence."). Furthermore, to the extent that the ALJ based her determinations of the severity of Wasik's impairments on his hearing testimony, as discussed below, substantial evidence supports the ALJ's assessment of that testimony.

Wasik also contends the ALJ neglected to discuss the opinions submitted by his treating psychiatrist and therapist, Dr. Raden and Dr. Schultz. In her decision, the ALJ stated "that both these providers rendered treatment and provided opinions well after the period at issue," and thus she did "not find the statements or questionnaires completed by the practitioners relevant or persuasive" regarding the relevant adjudicative period. Admin. Rec. at 25; *see also Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) (confirming that an ALJ can reject the report of a treating physician when it does not offer a "retrospective diagnosis"). To the ALJ's point, both of these providers' opinions were submitted long after Wasik's twenty-second birthday—one report was dated November 5, 2019, and the other November 27, 2019, right around the date Wasik turned twenty-six years old—and neither provided retroactive assessments looking back to 2015 or earlier, the relevant period. See Admin. Rec. at 953–56 (Dr. Raden's report); *id.* at 1040–44 (Dr. Schultz's report). The ALJ was therefore justified in dismissing the relevance of these reports.

6

Wasik argues next that the ALJ erred at step four of the evaluation process.[1] In particular, Wasik contends that the ALJ's determination of his RFC does not adequately take into account his seizures and sleep disorders. The Court overrules this argument as a basis for reversing the ALJ's decision. The ALJ specifically credited the hearing testimony of Dr. Munoz, the independent medical expert, who "opined that [Wasik] could perform sedentary work but would need seizure precautions like no ladders/ropes/scaffolds; no unprotected heights; not be around moving mechanical parts; and no driving." Id. at 25. Additionally, Dr. Munoz specifically addressed Wasik's sleepiness when he rejected "the need for additional breaks or off-task time[,] because [Wasik] was not compliant with the treatment recommended" for his sleep disorder. Id. Although reasonable minds might differ regarding the adequacy of these limitation accommodations and with the implicit proposition that adhering to certain treatment regimens would improve his functioning capacity, Dr. Munoz's opinion suffices as substantial evidence in the record. See Burmester v. Berryhill, 920 F.3d 507, 511 (7th Cir. 2019) ("[A]n ALJ may reasonably rely upon the opinion of a medical expert who translates [the medical record] into an RFC determination."). Again, Wasik's contention effectively asks the Court to reweigh the evidence, which it is not permitted to do.

Finally, Wasik argues that the ALJ failed to trace a path between Wasik's concentration difficulties and the proposition that he could perform work with the accommodations of simple instructions and decisions. The Court disagrees. It is

---

[1] As a preliminary issue, Wasik contends that the ALJ failed to follow through with her "assurance" at the end of her step three analysis that she "would provide a more detailed assessment of [his] mental functioning for purposes of determining RFC." Pl.'s Mem. in Supp. of Reversing Comm'r's Decision at 10 (dkt. no. 12). This contention lacks merit. Cf. Admin. Rec. at 19–26.

7

certainly true that the ALJ must build a bridge between the evidence and the conclusion. But the Seventh Circuit has made it clear that this bridge "require[s] only that the ALJ 'minimally articulate' his reasoning." *Filus v. Astrue*, 694 F.3d 863, 869 (7th Cir. 2012). The ALJ in Wasik's case did so. In particular, she credited the DDS mental health consultant's opinion that Wasik "could complete a normal workday" and "adapt to changes/stressors associated with simple, routine, competitive work activities." Admin. Rec. at 25. Specifically, the ALJ found persuasive the consultant's opinion that Wasik "retained the capacity to understand, remember, carry out, and sustain performance of 1-3 step tasks but would become overwhelmed if the procedures were more complicated." *Id.* The ALJ accordingly included restrictions that would "prevent anxiety or potential anxiety in the workplace." *Id.* Thus, the ALJ sufficiently built a bridge between Wasik's concentration difficulties and the conclusion that he was able to work with certain accommodations.

**2. Wasik's testimony**

Wasik argues next that the ALJ improperly assessed his testimony when she found that his statements regarding his symptoms were inconsistent with the medical record. This argument lacks merit. The Seventh Circuit has instructed that an ALJ's findings regarding a claimant's subjective complaints are entitled to "special deference." *Summers v. Colvin*, 864 F.3d 523, 528 (7th Cir. 2017) (discussing the deference owed when a claimant makes statements that conflict with medical records). The ALJ credited Wasik's testimony regarding the symptoms he reported because they were consistent with the medical record. But, after comparing Wasik's hearing testimony to his medical providers' treatment notes, the ALJ found that his "statements concerning

8

the intensity, persistence and limiting effects of [his] symptom [were] not entirely consistent with the medical records." Admin. Rec. 23. In other words, the ALJ disagreed with Wasik only with regard to the self-reported severity of his symptoms.

The record supports this conclusion, as demonstrated by the ALJ's lengthy discussion of Wasik's medical records, which indicated that certain treatments improved his condition at times. *See, e.g.*, *id.* at 21 ("The claimant then began Ketamine and TMS (transcranial magnetic stimulation) treatments in December and reported a 'calmness.'"); *id.* at 22 ("It appears that there was some improvement with Wellbutrin but that he also had some waxing and waning of symptoms."); *id.* ("He also reported that he was happier on a higher dose of Lithium but acknowledged that he was spoiled, lacked maturity, and had problems with self-control because he did not take responsible steps."). Moreover, "subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

Additionally, despite Wasik's assertion to the contrary, there is nothing in the ALJ's opinion to indicate that she based her decision on an inference about Wasik's condition worsening after the relevant period. When the ALJ pointed out that hearing testimony indicated that Wasik's condition had worsened in the years after his twenty-second birthday, she did so in the context of discussing two third-party witness reports, specifically statements from Wasik's mother and from his friend. The ALJ acknowledged that these reports corroborated the proposition that Wasik's condition had worsened, but she ultimately discounted their relevance because both reports were completed more than three years after the relevant time period. *See* Admin. Rec. at 24.

9

Further to this point, the ALJ also noted that at a June 2015 evaluation with a psychiatrist, "[b]oth the claimant *and his parents* were noted to be poor historians as all had difficulty describing symptoms, mood, and treatments." *Id.* at 23 (emphasis added). At bottom, substantial evidence supports the ALJ's RFC determination.

**3.     Medical opinions**

Wasik's final argument concerns how the ALJ assessed the opinions of various medical practitioners, including the DDS consultant and Wasik's current treating providers. In short, the ALJ properly considered all these opinions, and Wasik has not cited any caselaw suggesting otherwise. To the extent that the ALJ disagreed with certain elements of the DDS consultant opinion, this was well within her discretion, especially seeing as how the ALJ actually found Wasik *more* limited than the DDS consultant. *See Burmester*, 920 F.3d at 510 (crediting an ALJ finding that "was more limiting" than the state doctor as "illustrating reasoned consideration given to the evidence"). Additionally, as discussed above, the ALJ did not err in disregarding the opinions of Dr. Raden and Dr. Schultz in light of the fact that they only pertained to Wasik's condition some four years after the relevant time period. Despite Wasik's contention otherwise, the ALJ did not reject these opinions out of hand and explained why she did not find them persuasive. *See* Admin. Rec. at 25.[2]

## Conclusion

For the foregoing reasons, the Court grants the defendant's motion for summary judgment [dkt. no. 15] and directs the Clerk to enter judgment affirming the decision of

---

[2] The Court does not address, of course, whether Wasik might be able to show that he became disabled as of a point after the period relevant to his application for childhood disability benefits.

the Acting Commissioner of Social Security denying plaintiff Matthew Wasik's claim for benefits

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 25, 2022